UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NICOLE A. WILKINS,

                     Plaintiff,               CASE # 1:18-cv-00067

v.                                                  MEMORANDUM
                                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.

---

## **INTRODUCTION**

Pending before the Court is Plaintiff's motion for judgment on the administrative record. *See* Docket Entry ("DE") 13. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was "not disabled," and therefore not entitled to Disability Insurance Benefits ("DIB") or Supplement Security Income ("SSI"). (*See* Administrative Transcript (DE 7) at 12-27).[1] This matter has been referred to the undersigned, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and the consent of the parties. *See* DE 21.

Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative record (DE 13) is **DENIED**, the Commissioner's motion for judgment on the pleadings is **GRANTED**, and the ALJ's decision is affirmed.

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "Tr." followed by the corresponding page number(s) as denoted by the large black print on the bottom right corner of each page.

I.      FACTS AND PROCEDURAL HISTORY

On July 7, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (Tr. 15). Generally, Plaintiff's alleged disability consists of back and neck pain, arthritis, heart problems, anxiety, high blood pressure, shoulder pain, leg pain, depression, and migraines. (Tr. 206-209,0211-218, 253). Her alleged disability onset date is October 30, 2013. (Tr. 15). Her date last insured is June 30, 2015. (Tr. 219). Plaintiff's application was initially denied, after which she timely requested a hearing before an ALJ. On March 1, 2017, Plaintiff appeared before the ALJ Lynette Gohr (Tr. 12), who issued a written decision on May 16, 2017 denying Plaintiff's application. (Tr. 12-27). On November 15, 2017 the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4).

As part of the decision the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2. The claimant has not engaged in substantial gainful activity since October 30, 2013 the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bilateral shoulder degenerative joint disease and impingement syndrome-status post multiple surgeries, degenerative disc disease of the cervical spine-status post March 2016 ACDF surgery, and degenerative disc disease of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the

claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), because the claimant is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Although the claimant is unable to climb ladders, ropes and scaffolds, she is able to occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant is occasionally able to reach overhead with her bilateral upper extremities, and she is able to frequently, but not constantly, engage in fine and gross manipulation with her bilateral upper extremities. In addition, the claimant is unable to work at unprotected heights or around dangerous machinery.

6. The claimant is unable to perform any past work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 17, 1967 and was 46 years old, which is defined as a younger individual, age 18-49, on October 30, 2013, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-20).

On appeal, Plaintiff submits the following assertions of error: (1) the ALJ failed to properly address and evaluate evidence of Plaintiff's mental health disorders, migraines, and other conditions; and (2) the ALJ failed to further develop the record. (DE 13). Plaintiff therefore requests that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. (*Id*. at 30).

## II. ANALYSIS

### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

The Commissioner employs a five-step sequential evaluation process in considering whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing

4

and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then she is not disabled. *Id.* If she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

### B. The Commissioner's Decision

The ALJ resolved the current Plaintiff's claim at step five of the five-step process. Although Plaintiff was found to have met the first two steps, the ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and was therefore not presumptively disabled. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform work at light exertional levels with express limitations to account for her severe impairments, and that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform despite such limitations. (Tr. 17-26).

## C. Assertions of Error

### 1. The ALJ failed to develop the record

At the request of Plaintiff's attorney, the record was held open for ten days after the hearing for submission of additional evidence, including updated office treatment notes, hospital records, and a treating physician medical source statement. (Tr. 15). Plaintiff identified outstanding records in her pre-hearing memorandum, submitted various records after the hearing, and never informed the ALJ or Appeals Council that there were still outstanding records (Tr. 305). Plaintiff submitted a form from one provider stating no records were available. Notably, the record request was dated the same day as the hearing (Tr. 919). Over a month after the hearing, Plaintiff submitted a medical source statement from Dr. Godger at Spectrum Health Services, dated March 15, 2017. (Tr. 926). Although after the ten days granted verbally at the hearing, the statement was admitted into the record by the ALJ. (Tr. 15).

Plaintiff argues the ALJ erred by not getting additional records from Spectrum Health Services, particularly in light of a statement by Dr. Godger from that agency. However, the ALJ's decision indicates there was substantial evidence of record without obtaining those records. Further, the missing records which may have shown ongoing treatment or frequency of treatment with Dr. Godger, was only one of many reasons that Dr. Godger's opinion was given little weight.

First, the ALJ properly developed the record. As stated previously, the record was kept open for the submission of records. *Brown v. Colvin,* No. 3:14-cv-1784(WIG), 2016 U.S. Dist. LEXIS 66527, at *7 (D. Conn. ·May 20, 2016 ) ("When an ALJ holds open the record . . ., the ALJ will be found to have fulfilled her duty to develop the record."); *Eusepi v. Colvin,* 595 F. App'x 7 (2d Cir. Dec. 1, 2014) (There were no "obvious gaps" in the administrative record; Plaintiff was represented by counsel; and the ALJ was not required to affirmatively seek out

additional evidence); *Jordan v. Comm'r of Soc. Sec.*, 142 F.App'x 542, 543 (2d Cir. Sept. 8, 2005) (Although an ALJ did not contact a medical source for updated records, the Second Circuit has found no error or failure to develop the record where claimant's counsel volunteered to obtain the records, the ALJ kept the record open to allow supplementation of the record, counsel subsequently stated that there was nothing further to add, and claimant did not request the ALJ's assistance in securing additional evidence). Plaintiff never asked for more time to submit additional records, nor did she inform the ALJ or Appeals Council that there were outstanding records. If they were requested by the Plaintiff, as stated in her pre-hearing memorandum, it would have been appropriate for the ALJ to "satisfy the duty to develop the record by relying on the plaintiff's counsel to obtain additional medical documentation." *Wozniak v. Comm'r of Soc. Sec.*, No. 1:14-CV-00198, 2015 WL 4038568, at *9 (W.D.N.Y. June 30, 2015); *Myers ex rel. C.N. v. Astrue,* 993 F.Supp.2d 156, 163 (N.D.N.Y. 2012).

There was substantial evidence of record that clearly contradicted Dr. Godger's opinion and supported only mild mental limitations. The form itself was internally inconsistent. Dr. Godger stated he had treated Plaintiff every three months since 2012 but the record shows treatment did not start until September 2014. Plaintiff does not allege there were treatment notes prior to these and only noted outstanding records after January 2015. (Tr. 305). Plaintiff's reported daily activities, including caring for an 8-year-old autistic child, going out to eat, driving, and doing laundry, were also inconsistent with the serious limitations opined by Dr. Godger. (Tr. 21, 49-57). Treatment records from other providers also stated the claimant's mental condition was improved and stable on medication. (Tr. 18, 314, 613, 862). There were even four other medical opinions in the file that did not find anything more than mild mental limitations, which the ALJ relied upon. (Tr. 18-25). *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. September 27, 2016) (The Court held that

the ALJ appropriately declined to adopt the doctors' moderate limitations performing complex tasks and maintaining social functioning, inasmuch as they were contradicted by evidence in the record. The ALJ in fact noted, in part, that Plaintiff was engaged in moderately complex tasks, including helping with the care of her grandchildren, using computers, and other daily activities.); *Wavercak v. Astrue*, 420 F.App'x 91, 94 (2d Cir. Apr. 25, 2011) (ALJ properly discounted treating physician's opinion that was at odds with his earlier opinion, other opinions in the record, and claimant's description of his daily activities).

At the time of the request for review by the Appeals Council, Plaintiff did not submit any additional medical records. Despite asking for, and being granted, an extension of time to submit additional evidence, no additional evidence was ever submitted. (Tr. 7, 205). The issue of any missing records was never brought up. (Tr. 205).

**2. The ALJ failed to properly address and evaluate evidence of Plaintiff's mental health disorders, migraines, and other conditions**

The ALJ found the claimant's migraine headaches, depression and anxiety were nonsevere impairments. (Tr. 18). In addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir.2008). As the Second Circuit has explained:

> This technique requires the reviewing authority to determine [at step two] first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If the claimant is found to have such an impairment, [at step three] the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *Id.* § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Id.* § 404.1520a(d)(1).

8

Plaintiff argues it was an error for the ALJ to rely on state agency review physician, L, Hoffman, for a finding of mental impairments of depression and anxiety nonsevere. (DE 13 at 20). The page cited by Plaintiff in her brief has no mention of Dr. Hoffman, but rather treating source records. Dr. Hoffman's opinion is discussed during the evaluation of the "B criteria" under the "special technique" discussed above but other records were also cited. Specifically, consultative examiner Dr. Ransom, who diagnosed the claimant with panic disorder with agoraphobia and major depressive disorder, mild. She also only opined mild limitations, which is consistent with the finding of nonseverity under the special technique. Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013).

The ALJ properly provided specific findings regarding the degree of limitation in each of the four functional areas in the "special technique" when evaluating the mental impairments, showing her decision was based on substantial evidence and not solely one opinion by Dr. Hoffman, as alleged. The ALJ's finding that Plaintiff had no severe mental impairments was also supported by the opinion of Dr. Ransom, a psychological consultative examiner, who found that Plaintiff had no limitations in the ability to understand and follow simple instructions and perform simple tasks independently and to learn simple new tasks, but mild limitations in the ability to perform complex tasks. (Tr. 19, 443). Dr. Ransom indicated that the results of Plaintiff's psychiatric examination were consistent with mild psychiatric conditions, which would not significantly interfere with Plaintiff's ability to function on a daily basis. (Tr. 444).

Medical records also supported the ALJ's finding that the mental health impairments were not severe. As cited in the decision, although prescribed psychotropic medication for her symptoms, records show the claimant responded well to medication management. In June 2014, Dr. Jo, observed that Plaintiff's depression was improved with Celexa medication and she no longer felt depressed. (Tr. 18, 314). In October 2014 and April 2016, primary physician records state the claimant's depression was stable and anxiety well-controlled. (Tr. 613, 862).

The only evidence cited by Plaintiff in advancement of her argument that the mental health impairments are severe, is a check box form completed by Dr. Godger, after the hearing, on March 15, 2017 (Tr. 921-926). Dr. Godger stated that Plaintiff could not meet competitive standards in the ability to carry out very short and simple instruction but was seriously limited in her ability to perform detailed instructions, which is less limited than for simple instructions, but does not provide any explanation. (Tr. 24, 924-25). The ALJ gave "minimal" weight to this opinion and clearly articulated in the decision the reasons why and cited the substantial evidence which was consistent through the file and relied upon in formulating the RFC. (Tr. 24). *Tricarico v. Colvin*, 681 F. App'x 98 (2d Cir. March 3, 2017) (The Court concluded that the ALJ's decision to afford limited weight to the treating source's assessment was supported by substantial evidence, insofar as it contained internal inconsistencies and was also inconsistent with Tricarico's testimony and the findings and conclusions of the consultative examiner reflecting greater functional ability).

As discussed above, the lack of treatment records from Dr. Godger's agency was only one of the reasons cited for the minimal weight given. Despite the absence of those records, there were other treatment records and examinations that did not support the opinion. Dr. Godger's opinion was inconsistent with the medical records in the file. As discussed above, the record showed that although prescribed psychotropic medication for her symptoms, Plaintiff responded well to

medication management. Additionally, Plaintiff reported that she did household chores, went to church, engaged in some socialization, went out to eat, went to the park, cared for her 8-year-old autistic child, went to open houses at school, drove, and did laundry. (Tr. 21, 49-57). These activities are inconsistent with an individual who has serious limitations in her ability to perform cognitive work-related activities as opined by Dr. Godger. (Tr. 924-25). Therefore, the ALJ properly considered the relevant factors when deciding to give only minimal weight to Dr. Godger's opinion. *Wavercak v. Astrue*, 420 F.App'x 91, 94 (2d Cir. Apr. 25, 2011) (ALJ properly discounted treating physician's opinion that was at odds with his earlier opinion, other opinions in the record, and claimant's description of his daily activities); *see also* 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (d)(3)-(6), 416.927(d)(2)(i)-(ii), (d)(3)-(6) (explaining that deference accorded to treating physician's opinion may be reduced based on consistency of opinion with the rest of the medical record, and any elements "which tend to…contradict the opinion").

Despite Dr. Godger's treating relationship, the opinions of Dr. Ransom and Dr. Hoffman were supported and consistent. It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e). "[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010). Further, the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence of record. *Camille v. Colvin*, 652 F. App'x (2d Cir. 2016); ); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* No. 15-3502, 667 F. App'x 319 (2d Cir. 2016); *Frye ex rel. A.O.*

*v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

Although the ALJ mentions GAF scores, she properly noted that it was not relied upon "solely" and given "reduced weight" because of the inherent inconsistency and insufficient details. (Tr. 24). Plaintiff's reliance on the GAF scores to support severity is misplaced as there is no direct correlation to the severity standard used by the Commissioner and because they are no longer utilized in the Diagnostic and Statistical Manual of Mental Disorders (DSM). *See* 65 Fed.Reg. 50746, 50764–65 ("[GAF scores] do[ ] not have a direct correlation to the severity requirements in our mental disorders listings."); *Mainella v. Colvin*, No. 13-CV-2453(JG), 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014) (The most recent edition of the DSM eliminated the use of the GAF scale).

In regard to her migraine headaches, the Plaintiff testified they occur occasionally, and the last one was a month earlier. (Tr. 21, 48). The claimant's treating physician, Dr. Jo, opined the Plaintiff could perform light work as she was able to lift 20 pounds occasionally and 10 pounds frequently and could stand and walk for six hours in an eight-hour workday. (Tr. 23, 576). However, Plaintiff did not cite any medical evidence to satisfy her burden of demonstrating she was more limited than found by the ALJ. *Tryon v. Astrue*, No: 5:10-CV-0537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. February 7, 2012) ("the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, itself, sufficient to deem a condition severe.")(internal quotation marks and citations omitted); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that he cannot

perform the RFC as found by the ALJ). The ALJ accorded great weight to the opinion of Dr. Jo, and Plaintiff does not allege there was any error in the weight accorded to that opinion.

Plaintiff's assertion that the ALJ erred by not considering the claimant's PTSD is incorrect. Plaintiff argues the consultative exam was stale because it did not have any PTSD related limitations. However, the alleged event that caused the PTSD was a motor vehicle accident in 2009. During the examination, Plaintiff did not even have any complaints about PTSD symptoms, nor allege it as causing any limitations. (Tr. 687). Therefore, the record was not stale, nor the impairment new after the consultative exam. Additionally, there was a statement regarding treatment for depression and PTSD in December 2014. (Tr. 693). As discussed before, the mental impairments were properly found to be nonsevere. Plaintiff has argued that the combined effect of the mental health impairments was not considered but also that they were not separately analyzed. Also, Plaintiff's citing of Listing 12.15 for Trauma and Stressor related disorders is misplaced as that listing was not effective until January 17, 2017. 20 CFR Part 404, Subpart P, Appendix 1, 20 CFR 416,920(c)(d), 416.925 and 419.926.

### 3. Borderline Age Category

It was not error for the ALJ to not consider the claimant's borderline age category for the application of the Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *See* Pl.'s Br. at 25. Although Plaintiff was near the age category of "closely approaching advanced age" this would not have changed the outcome of the ALJ's decision and was, therefore, not important for the ALJ to discuss. Rules 202.10 and 202.13 of the Medical-Vocational Guidelines reveal that for an individual who is closely approaching advanced age, with a limited or less education, unskilled work background, and RFC for light work, a finding of "not disabled" is warranted. The Vocational Expert's response to the ALJ's hypothetical was substantial evidence,

which allowed the ALJ to make a finding at the final step of the sequential evaluation. The hypothetical was based on Plaintiff's age from the alleged onset date through the date of the hearing, her education, work experience and RFC. (Tr. 72-73). *Suttles v. Colvin*, 654 F. App'x 44 (2d Cir. June 30, 2016) (As the ALJ did not err in assessing Suttles's RFC, the vocational expert's testimony identifying jobs in the national economy (based on a hypothetical incorporating the demands of the RFC) constituted substantial evidence supporting the ALJ's step-five determination).

### III. CONCLUSION

For the above stated reasons, it is ordered that Plaintiff's motion for judgment on the pleadings is DENIED, the Commissioner's motion for judgment on the pleadings is GRANTED, and the ALJ's decision is AFFIRMED.

Dated: June 17, 2019
Rochester, New York

_J. Gregory Wehrman_
HON. J. Gregory Wehrman
United States Magistrate Judge